UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAFFY ALENE LANTZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>ACTING COMMISSIONER OF THE )<br>SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>Defendant. ) | CAUSE NO.: 1:17-CV-394-TLS |

**OPINION AND ORDER**

Plaintiff Taffy Alene Lantz seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by failing to conduct a proper analysis to determine if her conditions were "severe" within the meaning of the statute, failing to incorporate into her residual functional capacity all of the limiting effects of her medically determinable impairments, and failing to give sufficient reasons for discounting the opinion of the Plaintiff's treating physician.

**BACKGROUND**

On August 12, 2013, the Plaintiff filed a Title II application for disability and disability insurance benefits, alleging disability beginning on March 15, 2008. (R. 35.) Her claims were denied initially on April 3, 2014, and upon reconsideration on August 19, 2014. (*Id.*) On February 10, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Sharon D. Ringenberg, an impartial vocational expert (VE)

also appeared at the hearing. (*Id.*) On July 16, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–4.)

On September 12, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration. (*See* ECF No. 1.)

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, March 15, 2008. (R. 37.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including mild cervical and lumbar spondylosis; mild degenerative changes of the left hip; hip bursitis; chronic sinusitis and asthma; hypertension; and neuropathic pain of foot. (*Id.*) The ALJ also found that the Plaintiff's

depression was a non-severe impairment as the ALJ found that the Plaintiff had no limitations in activities of daily living, social functioning, and concentration, persistence and pace. (R. 37–38.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," (§ 404.1520(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), specifically:

> [T]he claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can alternate to standing for 5 minutes, after every 30 minutes of sitting; alternate to sitting for 5 minutes, after every 30 minutes of standing; alternate to sitting for 5 minutes, after every 30 minutes of walking. She can occasionally climb ramps and stairs, ladders and scaffolds, balance, stoop, kneel, crouch, and crawl. She can have frequent exposure to dust, odors, fumes and pulmonary irritants.

(R. 39–40.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. (R. 35–46.) The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms. (R. 41.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely credible and declined to assign greater limitations than those reflected in the RFC. (*Id.*)

The Plaintiff has past relevant work as a retail sales clerk, SVP 3, which is semi-skilled, light exertional work; and general office clerk, SVP 3, which is semi-skilled, sedentary—as performed by the claimant—exertional work. (R. 44–45.) The ALJ concluded that the Plaintiff was unable to perform her past relevant work. (R. 45.) Alternatively, relying on the VE's testimony, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Therefore, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date within the meaning of the statute. (R. 46.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

# ANALYSIS

The Plaintiff argues that the ALJ erred by failing to conduct a proper analysis to determine if her conditions were "severe" within the meaning of the statute, by failing to incorporate into her residual functional capacity all of the limiting effects of her medically determinable impairments, and by failing to give sufficient reasons for discounting the opinion of the Plaintiff's treating physician.

The Plaintiff's first argument is that the ALJ's analysis at step three was insufficient. At this step, the ALJ wrote with regard to Listing 1.04, in full:

> The claimant's mild cervical and lumbar spondylosis does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equine) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

(R. 39.) The Plaintiff asserts that is merely a perfunctory analysis that does not permit meaningful review by the Court. The Plaintiff asserts that there is evidence of record that demonstrates every requirement under Listing 1.04, but, because the ALJ failed to discuss that evidence, it is not clear that the ALJ considered it. The Commissioner disagrees, and argues that the ALJ adequately discussed why the Plaintiff's impairments did not meet Listing 1.04 by discussing the lack of functional impairments as severe as alleged in step four of the analysis.

The Court is not persuaded by the Commissioner's argument. The ALJ provided no analysis at step three vis a vis the evidence in the record. He merely restated the requirements of Listing 1.04 and summarily stated that the Plaintiff's impairments did not meet them. The ALJ's analysis in this case "is the very type of perfunctory analysis [courts] have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick v. Colvin*,

6

775 F.3d 929, 935–36 (7th Cir. 2015) (collecting cases). "The omission of any discussion of [the Plaintiff's] impairments in conjunction with the listings frustrates any attempt at judicial review . . . ." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("By failing to discuss the evidence in light of [the relevant Listing's] analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing.").

The ALJ's step four discussion does not save the deficiencies at step three as "[i]t shed little to no light on how or if [the Plaintiff's] [severe impairments] met or medically equaled a Listing." *Nichols v. Colvin*, No. 3:13-cv-1205, 2015 WL 196379, at *5 (N.D. Ind. Jan. 13, 2015); *see also Helterbrand v. Berryhill*, No. 1:17-cv-1318, 2017 WL 6523409, at *2 (S.D. Ind. Dec. 21, 2017) ("It defies commonsense to think that a reader would see the ALJ's one-sentence assertion and conclude that evidence strewn throughout later sections provide the factual support for that conclusion."); *O'Donnell v. Astrue*, No. 1:10-CV-458, 2011 WL 3321289, at *7 ("Indeed, the ALJ does not launch into any detailed discussion of [the plaintiff's] . . . impairments and the medical evidence concerning them until *after* she rendered her step three finding. Consequently, it is unclear from the ALJ's decision what impact the medical evidence of [the plaintiff's] . . . impairments had on her step three determination or whether the ALJ even considered this evidence at step three." (citing *Brindisi*, 315 F.3d at 786)). And, "even if the medical evidence was related to the relevant Listings, the ALJ failed to provide the logical bridge necessary" for the parties and this Court to "see the connection." *Nichols*, 2015 WL 196379, at *5.

While it is true that "[the Plaintiff] bears the burden of showing that [her] condition meets or equals a listed impairment," *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), the Court is

7

unable to "discern from the ALJ's scant analysis whether []he considered and dismissed, or completely failed to consider . . . pertinent evidence." *Minnick*, 775 F.3d at 936. The Plaintiff points to evidence in the record that at least supports her claim that her impairment meets Listing 1.04. For example, an MRI from 2006 identified a subarticular protrusion at C3-C4 that caused slight compression of the C4 nerve root, (R. 352), but the ALJ did not acknowledge this piece of evidence despite acknowledging later MRIs showing a bulging disc at C3-C4. The Commissioner argues that the 2006 MRI is not relevant to the ALJ's analysis because it pre-dates the Plaintiff's alleged onset date, and notes that the MRIs within the relevant time period do not mention any nerve compression.

The Court is not persuaded by the Commissioner's rationalization of the ALJ's failure to mention the 2006 MRI. As the Plaintiff points out, she suffers from degenerative disc disease. By definition, "degenerative" diseases are those that grow worse over time, not better. *See Crawford v. Berryhill*, No. 2:16-CV-50, 2017 WL 7652307, at *4 (N.D. Ind. Feb. 27, 2017) (citing *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013)). "[T]he date of the MRI is not in and of itself a legally sufficient or medically sound basis for discounting the results or finding them 'unpersuasive.'" *Massion v. Colvin*, No. 15 C 7529, 2016 WL 6680510, at *7 (N.D. Ill. Nov. 14, 2016) (noting that the plaintiff's degenerative disc disease would only worsen over time, not improve). However, the Court cannot tell whether or why the ALJ found the 2006 MRI unpersuasive because the ALJ did not discuss the MRI at all. Further, later records need not explicitly mention nerve compression if they are nevertheless indicative of it. *See Minnick*, 775 F.3d at 936 (finding fault where ALJ failed to acknowledge an MRI that showed "mild to moderate mass effect on two neve roots, which can be indicative of nerve root compression). The 2006 MRI is evidence that is clearly relevant, if not the most important piece, to this part of the

step three analysis of Listing 1.04, but the Court cannot determine that the ALJ even considered it. *See Brindisi*, 315 F.3d at 786 ("Most significantly, the opinion fails to mention the strongest piece of evidence supporting [the claimant's] claim for benefits under the [relevant] listing . . . . Without even a mention, we are left to wonder whether the [evidence] was even considered.").

The Plaintiff also points to evidence of record that suggests that her impairments meet the other requirements of Listing 1.04. There is evidence of sensory loss (R. 431–33, 474, 495), antalgic gait (R. 431–33, 449), diminished range of motion in the lumbar and cervical spine (R. 431–33, 449, 495, 512), weakness (R. 431–33, 495), and radiating and radicular pain (R. 448, 493, 473, 511). In response, the Commissioner cites to evidence of record that undermines or contradicts the Plaintiff's assertions, e.g., records indicating normal range of motion (R. 471, 598). Whether the record taken as a whole demonstrates that the Plaintiff's symptoms meet Listing 1.04 is a question that ultimately may be answered in the negative, but the Court cannot review the ALJ's decision on this point because the ALJ did not discuss why he found parts of the record more persuasive than others or even if he considered the parts of the record to which the Plaintiff cites. *See Minnick*, 775 F.3d 929, 936 ("We cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, this pertinent evidence."); *Brindisi*, 315 F.3d at 786 ("Yet the ALJ's opinion is silent as to this critical piece of evidence, despite the ALJ's duty to acknowledge potentially dispositive evidence, since the ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." (internal quotation omitted)).

Moreover, even if the Court could infer from the ALJ's opinion that he considered the records to which the Plaintiff cites and found them unpersuasive as to whether the Plaintiff's

9

symptoms literally meet Listing 1.04, there is no indication that the ALJ considered whether, nevertheless, the Plaintiff's symptoms medically equal the requirements of Listing 1.04.

Therefore, the Court must remand this case.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on this issue, it need not consider the reminder of the parties' arguments; however, the ALJ is encouraged to reconsider whether the Plaintiff's medically determinable impairments require further limitations in her RFC and to reconsider whether sufficient evidence of record exists to justify discounting the opinion of the Plaintiff's treating physician.

SO ORDERED on August 24, 2018.

                                           s/ Theresa L. Springmann
                                           CHIEF JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT